O/JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge |
|---|---|

| Raymond Neal | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):           Attorneys Present for Defendant(s):

Not Present                                                  Not Present

**Proceedings (In Chambers):** Order Granting Defendants' Motion to Dismiss [15]

## I.   BACKGROUND

Jordan Scott ("Plaintiff") brings this copyright infringement action against Stephenie Meyer, Little Brown and Company, Hachette Book Group, Inc. and Megan Tingley Books (collectively, "Defendants"). Plaintiff alleges that Meyer's book, *Breaking Dawn*, infringes Plaintiff's *The Nocturne*. Defendants now move to dismiss the complaint with prejudice, arguing primarily that the books are not substantially similar as a matter of law.

*Plaintiff's Work*

Scott's *The Nocturne* is a 358-page short novel billed as the first of an as yet unrealized trilogy. The story is set in 14th-century France and is steeped in magic, sorcery, demons, and the supernatural. It begins with Rainier de Aaradyn, a teen with mysterious powers, saving the life of (or resurrecting) Annora, with whom Rainier falls in love. Circumstances force Rainier to leave Annora and embark on a long journey of self-discovery, practicing magic along the way and becoming acquainted with his brothers. Annora subsequently reunites with Rainier on his journey and, although Rainier is thereafter stabbed in an ambush, he not only survives without injury but also watches in disbelief as his attackers burn to ash.

O/JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

Rainier then marries Annora, they consummate the marriage on a beach, and Annora conceives a child. Annora is thereafter stabbed and, before dying, she insists that Rainier save the unborn child, which turn out to be twins. Requiem, the boy, is delivered alive, and a girl first appears dead but is later revealed to have survived. Vowing revenge, Rainier becomes a murderous vampire, but later agrees to fulfill an ancient prophecy by joining the forces of good in an epic battle against evil. *The Nocturne* concludes by noting that "Annora's grave is not the end for her."

*Defendants' Work*

Meyer's *Breaking Dawn*, the fourth book in the highly successful *Twilight* series, is a 754-page novel set in present-day America where vampires and werewolves coexist uneasily in modern society. (Mot. at 1.) The series follows Bella Swan's evolving relationships with two good friends – Edward Cullen, a vampire, and Jacob Black, a werewolf. (Mot at 3.) In *Breaking Dawn*, Bella has already decided to marry Edward, which she does, honeymoons and unexpectedly conceives a part human-part vampire child, Renesmee. Bella survives the childbirth by transforming into a vampire, accepts the protection of Edward's clan when Renesmee is seen as a threat by the Volturi, a different vampire clan, and tries to defuse the jealousy of Jacob. Bella, Edward and Renesmee live happily ever after by the end of the story.

## II.   DISCUSSION

### A.   Legal Standard

To state a claim for copyright infringement, Plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361 (1991). The second prong, which is solely at issue in this case, requires Plaintiff to allege that "the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1132-33 (C.D. Cal. 2007) (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir.2002)).

O/JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

Defendants do not contest access at this juncture but, even if access is established, Plaintiff cannot state a claim if substantial similarity is lacking. *See, e.g., Krofft Tele. Prods. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) ("No amount of proof of access will suffice to show copying if there are no similarities."), *superseded on other ground by* 17 U.S.C. § 504(b). In analyzing substantial similarity, the Ninth Circuit employs both an "extrinsic test" and an "intrinsic test." *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994). The extrinsic component tests for similarity of expression based on objective criteria, while the intrinsic component tests for similarity from the subjective standpoint of the ordinary reasonable observer.

"Only the extrinsic test is assessed prior to a jury trial . . . because 'the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury.' " *Zella*, 529 F. Supp. 2d at 1133 n.8 (quoting *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006)). However, "a plaintiff who cannot satisfy the extrinsic test necessarily loses . . . because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests. " *Funky Films*, 462 F.3d at 1077 (quotation marks and citation omitted).

The extrinsic test focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of the two works." *Funky Films*, 462 F.3d at 1077 (quotation marks and citation omitted). "In applying the extrinsic test, this court compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Id.* The Court "must take care to inquire only whether the *protectable elements, standing alone,* are substantially similar." *Funky Films,* 462 F.3d at 1077 (quoting *Cavalier,* 297 F.3d at 822) (emphasis in original). This requires the court to "filter out and disregard the non-protectable elements in making [the] substantial similarity determination." *Id.* The protectable elements must demonstrate "not just 'similarity,' but 'substantial similarity.' " *Idema v. Dreamworks, Inc.,* 162 F. Supp. 2d 1129, 1179 (C.D. Cal. 2001).

O/JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

B.  Motion to Dismiss

As a preliminary matter, Plaintiff argues that "the present motion is a disguised and premature motion for summary judgment and should be denied on that basis alone." (Opp'n at 2.)  As the Ninth Circuit noted, however, [t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Pub. Co.,* 149 F.2d 202, 203 (9th Cir.1945) (specifically approving dismissal of a copyright complaint by comparing two works that were part of the record).  As both works are before the court, (*see* Request for Judicial Notice "RJN", Exhs. A, B)[1], the court proceeds to the merits of Defendants' motion.

The court begins by applying the extrinsic test to the facts of this case.  This inquiry examines the "similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of the two works." *Funky Films*, 462 F.3d at 1077.  Rather than provide an analysis of these elements, Plaintiff simply argues that the works are similar in three particular respects: the marriage sequence, consummation of the marriage on a beach, and the childbirth.  Having examined both works, the court proceeds to assess their similarity based on the foregoing criteria.

*Plots and Themes*

The plots and themes in the subject books have little in common.  *Breaking Dawn* is a fully realized vampire story, which focuses on the enmity between vampires and werewolves as well as the vampires' internal strife.  *The Nocturne* is mostly a journey of self-discovery for Rainier wherein he is transformed into a vampire toward the end of the book.  Similarly, the love story between Bella and Edward was elaborately developed in the preceding books of the *Twilight* series and reaches its happy ending in *Breaking Dawn*. *The Nocturne*, by contrast, briefly explores the tragic love between Rainier and Annora, which appears to end with Annora's violent death.

---

[1] Defendants' unopposed Request for Judicial Notice is GRANTED.

**O/JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

*Settings and Characters*

The settings and characters in the two works are vastly different. *Breaking Dawn* is set in present-day Washington State and the Pacific Northwest while *The Nocturne* is set in medieval France. *Breaking Dawn* includes bikers, trucks, police cruisers, airplanes and X-rays. (Mot. at 15.) *The Nocturne* involves grim castles, olden villages, farm animals and a climactic tomb scene in snow-covered mountains. The sole similarity suggested by Plaintiff is a forested area, which, by itself, is unprotectable. (Opp'n at 20.)

The characters are similarly different. The male protagonist in *Breaking Dawn*, Edward Cullen, is a vampire through and through while the protagonist in *The Nocturne*, Rainier de Aaradyn, is a mysterious young man attempting to discover himself who is transformed into a vampire toward the end of the novel. And, whereas Rainier undergoes several phases – the good-hearted healer, the vengeful vampire and, ultimately, a fighter against evil – Edward maintains his character throughout *Breaking Dawn*. Each novel includes a slew of supporting characters, moreover, without counterparts in the other. *The Nocturne*, for example, has no character like Jacob Black who competes with Edward for the affection of Bella. To the extent that the male protagonists are dashing young men tormented by their powers, such similarities are far too general to be actionable. Plaintiff, after all, does not argue that Defendants copied Plaintiff's specific expression of this particular character. *See*, *e.g.*, *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1176 (9th Cir. 2003) ("while there may exist similarities between the magician 'characters,' any shared attributes of appearance and mysterious demeanor are generic and common to all magicians"); *see also Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990) (copyright law protects a writer's *expression* of ideas, not the ideas themselves.).

The female protagonists are also dissimilar. Bella Swan is an outspoken and tactful woman who overcomes some difficulties, revels in becoming a vampire and lives happily "forever" with Edward. Annora is a fair maiden who defies her parents' will, marries Rainier and suffers a violent death. Like the men, these two characters are not sketched with such similarities in either appearance or demeanor as to be actionable.

**O/JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

*Pace and Sequence of Events*

While stories involving love and the supernatural inevitably involve the ups and downs of such genre, the pace and sequence of events in the respective works are substantially different. *The Nocturne*, for example, begins in a frenzied pace with Rainier saving Annora's life and departing after the villagers think him evil. The action then briefly tapers off as Rainier unites with his brothers and tries to learn about himself, but picks up again as he marries Annora, watches her die, embarks on a vengeful rampage and, ultimately, resolves to fight evil. The wedding is but a small part of the story, as is Annora at this point. *Breaking Dawn*, by contrast, begins with calmly preparations for an elaborate wedding and, aside from a mild disturbance during the reception, shifts into fast-pace action with Renesmee's birth. And, while *Breaking Dawn* maintains a steady tone by twice alternating between narrators, *The Nocturne* is somewhat uneven, alternating between narrators over a dozen times.

The sequence of events is no less different. Most telling is the fact that *The Nocturne* is the first book in a projected trilogy while B*reaking Dawn* is the last book of a four-part series. Thus, whereas *The Nocturne* sets the stage for what is to follow *Breaking Dawn* wraps up an elaborate story. The sequences in the works themselves also differ. As stated above, *The Nocturne* begins with a mysterious man bringing back to life an unknown woman with whom he falls in love, is forced to abandon her, later marries her, loses her to a horrible death, undertakes a vengeful rampage and finally resolves to fighting evil. In contrast, *Breaking Dawn* begins with a wedding, resolves certain problems resulting from the offspring of the lovers, and concludes happily with the family living together as vampires.

Insofar as both works present a similar sequence of marriage, consummation and child birth, such similarities in stock elements are not actionable. *See*, *e.g.*, *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir.), cert. denied, 474 U.S. 826 (1985) (copyright law does not protect "all situations and incidents which flow naturally from a basic plot premise, so-called scenes a faire.") (citation omitted). With the exception of shotgun weddings, any love story would usually include this sequence of events.

O/JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

*Mood and Dialogue*

The moods and dialogues in the works are not substantially similar. While some similarity in mood could be detected in both stories given the subject matter of both, *Breaking Dawn* begins somewhat pleasantly (with a drawn out wedding) whereas *The Nocturne* is more dark, with the exception of a brief wedding and honeymoon. And, while the happy future of the vampire family is all too certain in *Breaking Dawn*, it is not clear what the future holds for Rainier, Annora and their children.

The dialogues are positively dissimilar. *The Nocturne* presents an amalgamation of largely archaic and some modern language that is likely unparalleled in either classical or modern literature. *Breaking Dawn*, on the other hand, maintains a very modern and fresh tone throughout the story that is appealing to younger audience.

Plaintiff offers several excerpts from both works to suggest that the dialogues are similar. (*See* Opp'n at 21-22.) Specifically, Plaintiff proposes to establish the similarity of pace, mood and dialogue between the two works by the repetitive use of the amorous term "love" between the two sets of lovers. Suffice it to say, such use of this term between lovers is neither original, protectable nor particularly instructive in this case. Plaintiff's selective compilation of random phrases from the works does not inform the court as to the overall pace, mood and dialogue. The court's own impartial reading of the works reveals no such *substantial* similarity, to the extent any similarity is even discernable. *See Idema*, 162 F. Supp. 2d at 1179 (copyright plaintiff must show "not just 'similarity,' but 'substantial similarity.'").

C.   Plaintiff's Arguments

Plaintiff points to three specific examples of similarities between *The Nocturne* and *Breaking Dawn*: the wedding sequences, the consummation of the weddings on the beach and the difficult childbirths. (Opp'n at 4-8, 19.) The court addresses each of these allegations in turn.

O/JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

*The Weddings*

     Plaintiff first takes issue with the similarity of weddings between humans and vampires. This argument is a nonstarter because, at the time of the marriage in *The Nocturne*, Rainier is not yet a vampire. Mysterious as he may be at the time of the wedding, Rainier is actually transformed into a vampire well after the wedding – after Annora, the bride, was killed. Thus, this alleged similarity is of no moment.

     Plaintiff next points out that both brides wear braided hair, quoting the relevant language in both works. (*See* Opp'n at 4) ("Her hair was braided tightly in a French braid, as you might expect." – *The Nocturne* "Sure, Alice said, you can start braiding, I want it intricate. The veil goes here, underneath. Alice stepped up and quickly slid both combs into my hair under the edge of the thick braids." – *Breaking Dawn*). First, this similarity is overstated, especially because Annora wears a single "French braid" while Bella apparently wears several "thick braids." Secondly, Plaintiff may not lay claim to such common hair style, especially absent specific descriptions or distinctions.

     Similarly, Plaintiff cannot claim that the presence of flowers and an arch are somehow unique at weddings. The descriptions of the weddings in both novels, as illustrated below, are not as similar as Plaintiff proposes. *The Nocturne* provides: "It seemed there were cheers and celebration for miles, with white, lavender and burnt-gold flowers strung all around. . . At the peak was a wooden archway as an altar, garlanded with rosemary and tiny blossoms." (Opp'n at 5.) *Breaking Dawn* provides: "For a brief second, I was distracted by the profusion of white blossoms that hung in garlands from everything in the room that wasn't alive, dripping with long lines of white gossamer ribbons. I tore my eyes away from the bowery canopy and searched across the rows of satin-draped chairs . . . until I found him at last, standing before an arch overflowing with more flowers, more gossamer." (Id.) The sole similarities between the two descriptions of the wedding scenes are thus the blossoms, flowery garlands and an arch. Such similarities are not substantial, however, but are in fact stock elements invariably found in most weddings. The expressions of the wedding scenes are different, moreover, and do not support an infringement claim.

**O/JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

Insisting that the works are substantially similar, Plaintiff points to "the identical marriage vows ending in 'as long as we both shall live' [ ] instead of the standard 'till death do us part.' " (Opp'n at 4.) This similarity is not particularly impressive because "as long as we both shall live" is a common variant on traditional vows and is not original to Plaintiff. The vows are also expressed differently in the two works. In *The Nocturne*, the vows are recited in full as follows: "wilt thou have this woman to be thy wedded wife? Wilt thou love her, comfort her, honor, and keep her, in sickness and in health; and forsaking all others, keep thee only unto her, so long as ye both shall live?" (Exh. B at 136.) In *Breaking Dawn*, by contrast, the variant on the traditional vows is merely noted, slightly differently, without the actual vows. (*See* Exh. A at 49) ("We asked Mr. Weber to make only one small change. He obligingly traded the line 'till death do us part' for the more appropriate 'as long as we both shall live'").

*Consummation on the Beach*

Before exploring the relevant arguments, the court notes that Plaintiff's representation of these scenes is highly questionable. Plaintiff quotes several lines from both works as if they occur consecutively while, in actuality, those lines are randomly plucked from several pages of text. (*See* Opp'n at 5-6; Reply at 4-5.) Nevertheless, review of the relevant scenes reveals two apparent similarities: the couples making love on a beach and the respective men's concern that the act might hurt their brides.

First, no infringement arises from both couples making love on the beach. *See*, *e.g.*, *Berkic*, 761 F.2d at 294 ("depictions of the small miseries of domestic life [and] romantic frolics at the beach . . . are also unprotectable"). As the Ninth Circuit observed: "These familiar scenes and themes are among the very staples of modern American literature and film. The common use of such stock cannot raise a triable issue of fact on the plaintiff's copyright claim. It merely reminds us that in Hollywood, as in the life of men generally, there is only rarely anything new under the sun." *Id.* The same holds true in this case. Plaintiff does not argue that her particular expression was copied or that Defendants' scene is substantially similar. As Defendants rightly points out, the choreography is very different and, unlike *The Nocturne*, the sex in *Breaking Dawn* actually occurs in the water, not on the beach. (*See* Reply at 4.)

O/JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

Plaintiff argues the similarity between the works is also evident in the men's concern that intercourse might pain the respective brides. In *The Nocturne*, Rainier tells Annora "I will try to be careful, love, I will, I promise you. I'll be gentle as I can . . . but it is going to hurt you a little." (Opp'n at 6.) In *Breaking Dawn*, Edward tells Bella "I promised we would try. If...if I do something wrong, if I hurt you, you must tell me at once." (Id.) The expressions in the works are clearly dissimilar. The first promises care but predicts pain while the second requests notice should he do something wrong.

Review of the works reveals that Rainier's concern in *The Nocturne* arises from his bride's virginity while Edward's concern in *Breaking Dawn* stems from his supernatural vampire strength. Indeed, Edward cannot forgive himself after he bruises Bella's arms and refuses to make love to Bella for the remainder of the honeymoon. No such problem ensues between Rainier and Annora, on the other hand, and Rainier's concern appears unfounded in that respect. Given the differences in motivation and expression the court finds that this alleged similarity is anything but.

*The Childbirth*

The childbirth scenes are so different as not to require a lengthy comparison. (*See* Opp'n at 7-8.) Plaintiff is admonished, however, for the deceptive presentation of the alleged similarities.[2] Defendants are correct that the "first several lines from *Breaking Dawn* (page 171) quoted in Scott's comparison do not even involve the birth and actually occur 178 pages earlier than the following several lines which are cited from the birth (page 349)." (Reply at 2) ("Even worse, the first lines cited from *The Nocturne* to supposedly describe Annora in childbirth, are in fact a description that comes from nearly 200 pages earlier (pages 57-58) when Rainier is describing his *mother* and how she appeared when she attempted to poison herself."). Even with Plaintiff's misrepresentation, the scenes are wholly different.

---

[2] Plaintiff has twice manipulated aspects of the subject works in order to create the appearance of similarity. Counsel is hereby reminded that, while zealous representation is highly admirable, misrepresentation is equally sanctionable.

**O/JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-6076 ODW (RZx) | Date | 11/24/2009 |
|---|---|---|---|
| Title | *Jordan Scott v. Stephenie Meyer, et al.* | | |

In *The Nocturne*, Annora is fatally stabbed and, before passing away, she implores Rainier to cut her open to try and save the baby. The scene is bloody and painful as might be expected. In *Breaking Dawn,* Bella is carrying a half-vampire child whose rapid growth is killing her. The cesarian delivery is also bloody and Bella is only "saved" when Edward transforms her into a vampire. (*See* Reply at 5.) The births take place in different settings - Annora's in prison while Bella's is in the Cullen's home, the expressions are dissimilar (with the exception of stock elements like blood and painful countenances), and so is the source of danger to women's lives. And, while Annora dies after the birth, Bella is bitten by Edward and transformed into a vampire.

The court concludes by noting the Ninth Circuit's directive that district courts be "particularly cautious where, as here, the [plaintiff] emphasizes random similarities scattered throughout the works." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir.1984) (citation omitted). After heeding this advice and filtering out the unprotectable elements. as discussed above, Plaintiff is left with no articulable similarities to support an infringement claim. Taken separately or together, the common features of *The Nocturne* and *Breaking Dawn* do not allow a reasonable inference that the works are substantially similar. While both parties address the intrinsic test, finally, such inquiry is not only improper for this court to undertake, but is also unnecessary given Plaintiff's failure to satisfy the extrinsic test. *See Funky Films*, 462 F.3d at 1077.

### III.   CONCLUSION

After reviewing both works and considering the parties' arguments, the court finds that the novels are not substantially similar as a matter of law. Plaintiff's complaint is therefore DISMISSED WITH PREJUDICE.

**SO ORDERED**

|  | ---- | : | 00 |
|---|---|---|---|
| | Initials of Preparer | RGN | |